## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| TERREZ L. CARTER, | Case No. 3:24-cv-198 |
| Petitioner, | DISTRICT JUDGE |
|  | DAVID A. RUIZ |
| vs. |  |
|  | MAGISTRATE JUDGE |
| WARDEN TOM WATSON, | JAMES E. GRIMES JR. |
| Respondent. |  |
|  | **REPORT AND RECOMMENDATION** |

Pro se Petitioner Terrez L. Carpenter filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1, *see also* Doc. 5-1 (supplement to petition). Carter is in custody at the North Central Correctional Complex based on two judgment entries issued by the Allen County Court of Common Pleas, *State v. Carter*, No. CR20180275 and CR20180187. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend the Petition be dismissed.

### Summary of Facts

In habeas corpus proceedings brought under 20 U.S.C. § 2254, factual determinations made by the state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

1

The Ohio Court of Appeals for the Third District, Allen, County, Ohio summarized the facts underlying Carter's conviction as follows:

> {¶2} S.S. claimed that Carter raped her orally, anally, and vaginally at Carter's residence on April 19, 2018. She claimed that Carter told her she could not leave until he got what he wanted, and that Carter threatened her, saying he should beat her and put her in a body bag.
>
>> FN 1. Carter challenged S.S.'s version of events and her credibility, particularly due to her cocaine use and her prior text exchanges with Carter. These issues will be discussed infra in Carter's weight-of-the-evidence challenge.
>
> {¶3} After the incidents, S.S. called her friend and then went to the hospital. She was evaluated by a Sexual Assault Nurse Examiner ("SANE"). The SANE observed bruising on S.S.'s leg, neck, and abdomen. The SANE also observed a four millimeter cut on S.S.'s vaginal wall, skin tears in the vaginal and perianal region, and redness/swelling of S.S.'s cervix. The SANE testified that she would not expect to see tearing to that degree with a consensual encounter. Swabs were collected from S.S. and DNA consistent with Carter was found on the swabs.
>
> {¶4} Although initially reluctant, S.S. told her story to law enforcement. Subsequently, a search warrant was obtained for Carter's residence. At Carter's residence police located, *inter alia*, in excess of 60 grams of cocaine and a firearm.
>
> {¶5} S.S. was eventually contacted by another woman, S.H., who claimed Carter had held her against her will and raped her in 2015. S.H. dated Carter for over a year and had consensual encounters with him; however, around June of 2015, S.H. detailed an incident that occurred over multiple hours wherein Carter got physical with her after an argument and forced her to have vaginal, anal, and

2

oral sex with him, all allegedly while Carter had a firearm.

> FN 2. Carter also challenged S.H.'s credibility, particularly given the fact that the week before the trial she spoke to Carter on the phone and was intoxicated while doing so, despite professing her sobriety initially in her testimony. Again, these issues will be discussed infra in Carter's weight of the evidence challenge.

{¶6} S.H. believed that there might have been some video evidence of the incident, as she recalled Carter recording the matter. Police checked a SIM card that had been taken during the search of Carter's residence, and found videos of S.H. The videos depicted S.H. undressed, stating she did not want to be on video. Further, on the video, Carter repeatedly told S.H. to "open her legs" and she refused. At one point Carter says that he is going to "forcefully" open her legs, but he was not going to "rape her." (State's Ex. 61). Later, Carter records himself digitally penetrating S.H. while she cries. As he performs the act, he says things like S.H. was crying because she "love [sic] it." (*Id.*)

{¶7} On June 13, 2018, Carter was indicted in trial court case CR2018 0187 with possession of cocaine in violation of R.C. 2925.11(A), a first degree felony, and having weapons while under disability in violation of R.C. 2913.23(A)(3), a third degree felony.

> FN 3. The possession of cocaine charge carried an accompanying firearm specification pursuant to R.C. 2941.141(A), but that specification was later dismissed.

{¶8} On July 12, 2018, another indictment was filed against Carter in trial court case CR2018 0275. He was accused of three counts of rape of S.S. in violation of R.C. 2907.02(A)(2), all first degree felonies (Counts 1-3), kidnapping of S.S. in violation of R.C. 2905.01(A)(2), a first degree felony (Count 4),

three counts of rape of S.H. in violation of R.C. 2907.02(A)(2), all first degree felonies and all containing firearm specifications pursuant to R.C. 2941.145(A) (Counts 5-7), and kidnapping of S.H. in violation of R.C. 2905.01(A)(2), a first degree felony (Count 8).

> FN 4. There were additional counts in the original indictment filed on July 12, 2018, but the additional counts were ultimately dismissed and the indictment was renumbered into the form cited herein.

{¶9} Carter entered pleas of not guilty to all charges in both indictments. During the pretrial process, the State moved to consolidate the two cases for trial. Carter opposed the request and a hearing was held, but ultimately the trial court granted the State's request for consolidation in a written entry.

{¶10} Following extensive pretrial motion practice, wherein Carter went through five attorneys, some appointed, some retained, the cases proceeded to a jury trial. Both alleged victims testified at trial as well as various law enforcement officers who investigated the incidents. In addition, the SANE testified as did some individuals who knew the victims and the defendant. Carter's trial counsel cross-examined the witnesses and called multiple witnesses in his case-in-chief, who testified to, *inter alia*, S.H.'s drug use and her "toxic" relationship with Carter. Carter's counsel repeatedly challenged the credibility of the alleged victims, painting them as drug users who engaged in consensual encounters with Carter.

{¶11} Ultimately the jury convicted Carter of possession of cocaine and having weapons while under disability as charged in trial court case CR2018 0187. With regard to trial court case CR2018 0275, Carter was found guilty of all three rapes of S.S. (Count 1-3), kidnapping of S.S. (Count 4), two rapes against S.H. (Counts 5 and 7), and kidnapping of S.H. Carter was acquitted of one rape

against S.H. (Count 6), and he was acquitted of the firearm specifications accompanying Counts 5 and 7.

{¶12} On April 19, 2021, Carter's case proceeded to sentencing. In trial court case CR2018 0187, Carter was sentenced to serve 11 years in prison on the possession of cocaine charge, and 36 months in prison on the having weapons while under disability charge, consecutive to each other.

{¶13} In trial court case CR2018 0275, the trial court determined that the kidnapping charges related to each victim would merge with the rape charges related to each victim. The State elected to proceed to sentencing on the rape charges. Carter was then ordered to serve 11 years in prison on each of the five rape convictions. The three rape convictions against S.S. were ordered to be served concurrently with each other, and the two rape convictions against S.H. were ordered to be served concurrently with each other. However, the sentence for the rape against S.S. and the sentence for the rape against S.H. were ordered to be served consecutive to each other, and consecutive to the sentence imposed in trial court case CR2018 0187. Carter was thus sentenced to serve an aggregate 36-year prison term.

*State v. Carter*, 2022-Ohio-1444, 2022 WL 1298445, *1–2 (Ohio Ct. App. May 2, 2022); Doc. 10-1, at 323–27.

## Procedural Background

*State Court Convictions*

In June 2018, an Allen County grand jury indicted Carter on one felony count of possession of cocaine, which carried both a firearm and a forfeiture specification and one felony count of having weapons under disability. Doc. 10-1, at 7–8.

5

In July 2018, an Allen County grand jury issued another indictment charging Carter with six counts of rape, three of which carried a firearm specification. *Id.* at 10. Carter was also charged with two felony counts of kidnapping, one of which carried a firearm specification. *Id.* at 11–12. He was further charged with another count of possession of cocaine and two counts of having weapons while under a disability. *Id.* at 11–13. Carter pleaded not guilty to all charges. *Id.* at 15, 16.

Over the next three years, Carter, through various counsel, filed a series of pre-trial motions. *See id.* at 17–183.

In March 2021, a jury in case number CR2018-0187 found Carter guilty of possession of cocaine, with a forfeiture specification, and having a weapon while under disability. In case number CR2018-0275, a jury found him guilty of five counts of rape and two counts of kidnapping, with one firearm specification attached to the kidnapping charge. *See* Doc. 10-1, at 186–196.

In April 2021, the trial court sentenced Carter to an aggregate sentence of 36 years' imprisonment. *See id.* at 197–204.

*Direct Appeal*

In May 2021, Carter, through counsel, filed notices of appeal in each case. *See id.* at 205–226. The court of appeals consolidated the appeals. *Id.* at 227. Carter raised the following four assignments of error on direct appeal:

> A. Assignment of Error Number One: Appellant's due process rights to a fair trial was violated by the prejudicial joinder of multiple offenses at trial.

6

    B.    Assignment of Error Number Two: Appellant's Sixth Amendment right to a public trial was violated when the trial court closed the courtroom for a portion of the evidence.

    C.    Assignment of Error Number Three: The weight of the evidence did not support the guilty verdicts based on Sturgeon's allegations (rape counts one, two, three, and kidnapping count four in case no. 0275).

    D.    Assignment of Error Number Four: The weight of the evidence did not support the guilty verdicts based on Hudgins' allegations (rape counts five and seven, and kidnapping count eight in case no. 0275).

*Id.* at 229. The State filed a brief in response. *Id.* at 270. In May 2022, the court of appeals overruled each of Carter's four assignments of error and affirmed Carter's judgment and sentence. *Id.* at 321–56.

In June 2022, Carter filed a pro se appeal to the Ohio Supreme Court. *Id.* at 356. In his memorandum in support of jurisdiction, Carter raised the following four propositions of law:

    1.    Appellant's Fourteenth Amendment right to due process and Sixth Amendment right to a fair trial was violated by prejudicial joinder of multiple offenses for trial.

    2.    The Appellants Sixth Amendment right to a public trial was violated when the trial court closed the Courtroom for a portion of the evidence.

    3.    The weight of the evidence did not support the guilty verdicts based on Sturgeons

7

> > allegations. (rape counts 1, 2, 3, and kidnapping count four in case no 0275).
>
> 4.    The weight of the evidence did not support the guilty verdicts based on Hudgins allegations (rape counts five and seven and kidnapping count eight in case no. 0275).

*Id.* at 364–72. In August 2022, the Ohio Supreme Court declined to accept jurisdiction of Carter's appeal under Rule 7.08(B)(4) of its rules of practice. *Id.* at 410.

### *Rule 26(B) Application to Reopen Direct Appeal*

In August 2022, Carter, pro se, filed an application to reopen his direct appeal under Ohio Appellate Rule 26(B)[1] arguing that his appellate counsel was ineffective and stating the following 12 assignments of error:

> 1.    Appellate Counsel was ineffective in failing to assign as error that there was insufficient evidence to convict the Appellant of rape found in counts seven, eight, and nine.
>
> 2.    Appellate Counsel was ineffective for failing to raise the fact that there was insufficient evidence to convict the Appellant of count ten, kidnapping.

---

[1]    Ohio Appellate Rule 26(B) provides:

> A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

3.      Appellate Counsel was ineffective for not assigning error to evidence being admitted that was under false pretense.

4.      Appellate Counsel was ineffective in failing to assign error to the fact that a no-knock warrant was executed at Appellant's residence.

5.      Appellate Counsel failed to assign error to the fact that there were incorrect findings in the Motion to Suppress hearing which allowed the police to go beyond the scope of their warrant.

6.      Appellate Counsel failed to assign error to the fact that the SANE nurse in Appellant's case was no *certified* to be such.

7.      Appellate Counsel failed to assign error to an Ohio Rules of Evidence 404(B) instruction that actually solidified the 404(B) violation.

8.      Appellate Counsel failed to assign error to the fact that no Ohio Rule of Evidence 404(B) Notice of Use 404(B) Evidence was given prior to trial.

9.      Appellate Counsel failed to assign error to the fact that the trial court abrogated cross-examination on a credibility issue.

10.     Appellate Counsel was ineffective for failing to assign error to the fact that there was insufficient evidence to convict the Appellant of drug possession.

11.     Appellate Counsel was ineffective for failing to assign error to the fact that the sentencing court used unfounded assertions to sentence the Appellant.

> 12. Appellate Counsel was ineffective in failing to assign error to an unanimity issue which also goes to the sufficiency of evidence.

*Id.* at 411–420. Carter also filed an affidavit in support of his Rule 26(B) application. *Id.* at 422–25. In September 2022, the court of appeals found that Carter "ha[d] not satisfied the threshold showing required under App. R. 26(B)" and denied his Rule 26(B) application. *Id.* at 427.

In October 2022, Carter filed a notice of appeal with the Ohio Supreme Court. *Id.* at 431–45. In his memorandum in support of jurisdiction, Carter asserted the following 12 propositions of law:

> 1. Appellate Counsel was ineffective in failing to assign as error that there was insufficient evidence to convict the Appellant of rape found in counts seven, eight, and nine.

> 2. Appellate Counsel was ineffective for failing to raise the fact that there was insufficient evidence to convict the Appellant of count ten, kidnapping.

> 3. Appellate Counsel was ineffective for not assigning error to evidence being admitted that was under false pretense.

> 4. Appellate Counsel was ineffective in failing to assign error to the fact that a no-knock warrant was executed at Appellant's residence.

> 5. Appellate Counsel failed to assign error to the fact that there were incorrect finding in the Motion to Suppress hearing which allowed the police to go beyond the scope of their warrant.

6.   Appellate Counsel failed to assign error to the fact that the SANE nurse in Appellant's case was not *certified* to be such.

7.   Appellate Counsel failed to assign error to an Ohio Rules of Evidence 404(B) instruction that actually solidified the 404(B) violation.

8.   Appellate Counsel failed to assign error to the fact that no Ohio Rule of Evidence 404(B) Notice to Use 404(B) Evidence was given prior to trial.

9.   Appellate Counsel failed to assign error to the fact that the trial court abrogated cross-examination on a credibility issue.

10.  Appellate Counsel was ineffective for failing to assign error to the fact that there was insufficient evidence to convict the Appellant of drug possession.

11.  Appellate Counsel was ineffective for failing to assign error to the fact that the sentencing court used unfounded assertions to sentence the Appellant.

12.  Appellate Counsel was ineffective in failing to assign error to an unanimity issue which also goes to the sufficiency of evidence.

*Id.* at 431–45. In January 2023, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction over Carter's appeal. *Id.* at 449.

*Post-Conviction Petition*

In September 2022, while his Rule 26(B) application was pending, Carter, through counsel, also filed post-conviction petitions asking the trial court to vacate both of his convictions and sentences. *Id.* at 450–518 (petition in case number CR2018-0187); *id.* at 519–587 (petition in case number

11

CR2018-0275). Carter asserted the same seven claims, along with several subclaims,[2] in both petitions:

> CLAIM ONE: The Petitioner received ineffective assistance of counsel violating his right to effective assistance of counsel and a fair trial found in the Sixth and Fourteenth Amendments to the United States Constitution.

> CLAIM TWO: The State failed to disclose favorable evidence violating the Petitioner's right to due process and a fair trial found in the Sixth and Fourteenth Amendments to the United States Constitution.

> CLAIM THREE: There was extreme juror misconduct. This violated Petitioner's right to due process and a fair trial found in the Sixth and Fourteenth Amendments to the United States Constitution.

> CLAIM FOUR: Misconduct by the state violated the Petitioner's right to due process and a fair trial found in the Sixth and Fourteenth Amendments to the United States Constitution.

> CLAIM FIVE: The failure of the state to disclose material information prevented the Petitioner from presented a complete defense. This is a violation of the Petitioner's due process and the right to a fair trial found in the Sixth and Fourteenth Amendment to the United States Constitution.

> CLAIM SIX: The state precluded the spectators from hearing the voice on the recording by removing them from the courtroom when the recording was played. There were several spectators that were friends and relatives of the accused that could have determined the voice was not the voice of the accused. That violated Petitioner's right to a public trial.

---

[2]     In the interest of brevity, Carter's 26 subclaims are not listed here.

> CLAIM SEVEN: The voir dire/jury selection along with the jurors that were seated denied the Petitioner due process of law and fair trial found in the Sixth and Fourteenth Amendments to the United States Constitution.

*See id.* at 450. The state filed responses in both cases. *See id.* at 588–650. In October 2022, the trial court denied both of Carter's petitions, stating that all the claims were barred by Ohio's doctrine of *res judicata*, and even if not, his claims failed because he failed to provide sufficient operative facts to demonstrate any substantive grounds for relief. *Id.* at 651–60.

In March 2023, Carter, through counsel, filed a notice of appeal challenging the trial court's denial of his post-conviction petitions. *Id.* at 661. The court of appeals consolidated Carter's post-conviction appeals cases. *Id.* at 668. Carter asserted the following eight assignments of error:

> Assignment of Error 1: The trial court failed to afford Mr. Carter the statutory requirements contained in the post-conviction petition. That violated Mr. Carter's right to due process found in the Fourteenth Amendment to the United States Constitution.

> Assignment of Error 2: Mr. Carter received ineffective assistance of counsel. This violated Mr. Carter's Sixth Amendment right to effective counsel and his Fourteenth Amendment right to due process. This, and the subclaims related to this, are in relation to claim one and the sub claims related to claim one in the original post-conviction petition in the trial court.

> Assignment of Error 3: The state failed to disclose favorable evidence violating Mr. Carter's right to due process and a fair trial found in the Sixth and Fourteenth Amendments to the United States Constitution.

13

Assignment of Error 4: There was extreme juror misconduct. This violated Mr. Carter's right to due process and a fair trial found in the Sixth and Fourteenth Amendments to the United States Constitution.

Assignment of Error 5: Misconduct by the State violated Mr. Carter's right to due process and a fair trial found in the Sixth and Fourteenth Amendments to the United States Constitution.

Assignment of Error 6: The failure of the State to disclose material information prevented Mr. Carter from presenting a complete defense. This is a violation of Mr. Carter's due process and the right to a fair trial found in the Sixth and Fourteenth Amendments to the United States Constitution.

Assignment of Error 7: Mr. Carter has a fundamental right to a public trial. The State precluded spectators from hearing the voice on the recording. There were friends and relatives of the accused that could have determined the voice not to be that of the accused. This violated Mr. Carter's right to a public trial.

Assignment of Error 8: The vior dire/jury selection process along with the jurors that were seated denied Mr. Carter due process of law and a fair trial found in the Sixth and Fourteenth Amendments to the United States Constitution.

*Id.* at 671–75.[3] The state filed a response. *See id.* at 715. In August 2023, the court of appeals affirmed the trial court's denial of Carter's petition. *Id.* at 757; *see also State v. Carter*, 2023-Ohio-2918, 2023 WL 5348572 (Ohio Ct. App. Aug. 21, 2023). Carter did not timely appeal the court of appeals' decision to the Ohio Supreme Court.

---

[3]     Again, in the interest of brevity, Carter's numerous subclaims are not included here.

14

In December 2023, Carter, pro se, simultaneously filed a motion for leave to file a delayed appeal, *id.* at 782, and a notice of appeal, *id.* at 816. In February 2024, the Ohio Supreme Court denied Carter's motion for leave to file a delayed appeal. *Id.* at 819.

*Federal Habeas Corpus Petition*

In February 2024, Carter filed a petition in this Court seeking a writ of habeas corpus. Doc. 1. In May 2024, Carter filed a motion for leave to amend his petition, with the proposed amendment appended. Docs. 5, 5-1. In June 2024, the Court granted that motion and construed Carter's proposed amendment as a supplement to original petition. Doc. 7. Reading Carter's petition and supplement together, Carter raises the following 17 habeas grounds:

> GROUND ONE: Appellate Counsel was ineffective in failing to assign as error that there was insufficient evidence to convict the Appellant of rape found in count 7, 8, and 9.

> GROUND TWO: Appellate Counsel was ineffective in failing to raise the fact that there was insufficient evidence to convict the Appellant on count 10, kidnapping.

> GROUND THREE: Appellate Counsel was ineffective for not assigning error to evidence being admitted that was under false pretense.

> GROUND FOUR: Appellate Counsel was ineffective in failing to assign error to the fact that a "no" knock warrant was executed at Appellant residence.

> GROUND FIVE: Whether Appellate Counsel was ineffective in failing to assign error as to finding in

the motion to suppress hearing which alleged the police go beyond the scope of their warrant.

GROUND SIX: Whether Appellate Counsel failed to assign error as to the fact that Nurse SANE was not Certified as far as an expert witness.

GROUND SEVEN: Whether Appellate Counsel failed to assign as to an Ohio Rule of Evidence 404(B) instruction that solidified the 404(B) violation.

GROUND EIGHT: Whether Appellate Counsel failed to assign error as to no Ohio Rule of Evidence 404) notice of use 404(B) evidence prior to trial.

GROUND NINE: Whether Appellate Counsel failed to assign error as to the trial court abrogated cross-examination on credibility issue.

GROUND TEN: Whether Counsel was ineffective for failing to assign error as to insufficient evidence to convict the appellant of drug possession.

GROUND ELEVEN: Whether Appellant Counsel was ineffective for failing to assign error as to the sentencing court used unfounded assertion to sentence the Appellant.

GROUND TWELVE: Whether Appellant Counsel was ineffective in failing to assign error as town unanimity issue which also goes to sufficiency of evidence.

GROUND THIRTEEN: The trial court failed to apply the proper statutory requirement in rendering its decision regarding the post-conviction petition. This failure to follow statutory precepts was a violation of Petitioner's right to Due Process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

GROUND FOURTEEN: Trial counsel provided ineffective assistance of counsel during the course of Petitioner's trial, was a violation of Petitioner's Sixth and Fourteenth Amendment rights, under the United States Constitution, and Article 1, Section 10, of the Ohio Constitution.

16

GROUND FIFTEEN: The State failed to disclose favorable evidence, as well as, material information, to counsel for the Petitioner. Said misconduct was in violation of Petitioner's Sixth, Eight, and Fourteenth Amendment rights.

GROUND SIXTEEN: Misconduct on the part of potential jurors. Said misconduct was in violation of Petitioner's Sixth. Eighth, and Fourteenth Amendment right, under the United States Constitution.

GROUND SEVENTEEN: The trial court failed to provide petitioner with a public trial.

*See* Docs. 1, 5-1.

## Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, § 104, 110 Stat. 1214 (AEDPA or the 1996 Act), habeas petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when "state court remedies are no longer available to a petitioner because

17

he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review." *Id*.

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Robinson v. Horton*, 950 F.3d 337, 343 (6th Cir. 2020). To exhaust his remedies, a state defendant with federal constitutional claims must "fairly presen[t]" those claims to the state courts before raising them in a federal habeas corpus action. *Robinson*, 950 F.3d at 343 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Caver v. Straub*, 349 F.3d 340, 345 (6th Cir. 2003). And a habeas petitioner must "present[] both the factual and legal basis for [the] claims to the state courts." *Hanna v. Ishee*, 694 F.3d 596, 606 (6th Cir. 2012). This means that the "'petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law.'" *Williams*, 460 F.3d at 806 (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). "'[G]eneral allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were violated.'" *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017) (quoting *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see Woolbright v. Crews*, 791 F.3d 628, 631 (6th Cir. 2015)

19

("When a petitioner has failed to fairly present … claims to the state courts and no state remedy remains, [the] claims are considered to be procedurally defaulted.") (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)). While the exhaustion requirement is technically satisfied in this circumstance because state remedies are no longer available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), a petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show "cause for the default and actual prejudice as a result of the alleged violation of federal law," or show that a "fundamental miscarriage of justice" will result if the petitioner's claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that the state court's adjudication "was contrary to," or "involved an unreasonable application of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law'" refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at 231 (quoting 28 U.S.C. § 2254(d)(1) and *Woodall*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *see Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme

21

Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

22

## Discussion

*1. Grounds arising out of Carter's post-conviction petition*

*1.1. Grounds 14 through 16 are procedurally defaulted and meritless.*

In Ground 14, Carter asserts, by the Court's count, six reasons that his trial counsel was ineffective. Doc. 5-1, at 17. In Ground 15, Carter argues that the State failed to disclose favorable evidence and material information to him, in violation of his Sixth, Eighth, and Fourteenth Amendment rights. *Id.* And he asserts as Ground 16 that there was misconduct among the potential jurors, in violation of his Sixth, Eighth, and Fourteenth Amendment rights. *Id.* at 18.

Carter first raised his Ground 14 through 16 arguments in state court through his petitions for post-conviction relief. *See* Doc. 10-1, at 464 (Claim One, asserting the same arguments as Ground 14); 477 (Claim Two, asserting the same arguments as Ground 15); 481 (Claim Three, asserting the same arguments as Ground 16). When considering Carter's petitions for post-conviction relief, the trial court found that each of Carter's arguments could have been but were not raised on direct appeal. Doc. 10-1, at 665–67. So they were barred by Ohio's doctrine of res judicata. Doc. 10-1, at 665–67. And, the trial court continued, "[e]ven if the defendant's claims were not barred by res judicata, there is no merit to any of them." *Id.* at 665. On appeal, the court of

appeal's affirmed the trial court's denial of Carter's post-conviction petition.[4] Doc. 10-1, at 767.

Carter, however, failed to perfect an appeal the Ohio Supreme Court. Although he filed a motion for leave to file a delayed appeal, *id.* at 782, and a notice of appeal, *id.* at 816, the Ohio Supreme Court denied Carter's motion for leave to file a delayed appeal, *id.* at 819. The Ohio Supreme Court's denial is "a procedural ruling" which constitutes "an independent and adequate" basis to bar review of Grounds 14 through 16. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). Grounds 14 through 16 are thus procedurally defaulted.

Carter could avoid this result by showing "cause for the default and actual prejudice." *Id.* (quoting *Coleman*, 501 U.S. at 750). But Carter has not asserted cause or prejudice to excuse his procedural default.

Carter could also avoid this result by showing that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S.

---

[4]    The trial court found that all of Carter's claims were barred by res judicata, and even if they weren't he "did not point to or submit with this petition credible evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief." *See* Doc. 10-1, at 665–67. The Warden notes that the court of appeals only expressly identified that the trial court found that Ground 17 (the public trial claim) was barred by res judicata. *See* Doc. 10, at 22; Doc. 10-1, at 767. While the court of appeals did only specifically discuss the trial court's application of res judicata as to Carter's public trial argument, it did also, more generally, acknowledge that the trial court generally found that even where Carter's claims were not barred by res judicata it otherwise found all claims lacked support to demonstrate grounds for relief. Doc. 10-1, at 767. Regardless, the court of appeals affirmed the trial court's decision without qualification. *Id.* at 760.

478, 496 (1986); *see Schlup v. Delo*, 513 U.S. 298, 324 (1995) (a claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."). But, although Carter asserts in his Traverse that "[t]his case concerns the 'actual innocence' gateway," Doc. 13, at 7, he offers no new evidence of a constitutional violation and no argument to support the notion that he is actually innocent. *See Schlup*, 513 U.S. at 324. Instead, he simply points to cases that generally establish that habeas petitioners may possibly overcome a procedural bar by showing actual innocence. Doc. 13, at 7. These citations imply that he is perhaps claiming his actual innocence as a means to escape procedural default of his claims. But he makes no effort to connect these conclusory citations to any such argument and the Court will not make it for him. So Carter cannot rely on a claim of actual innocence to excuse his default of grounds 14 through 16.

### 1.2 *Ground 17 is meritless*

In his Ground 17 claim, Carter asserts that the trial court violated his right to a public trial when the trial court temporarily closed the courtroom to play a recording of one of the rape events. Doc. 5-1, at 19. Carter raised this argument on direct appeal, Doc. 10-1, at 251–53, and again in his post-conviction petition, *id.* at 486.

25

As explained by the Ohio court of appeals:

> prior to the brief courtroom closure, S.H. was testifying regarding the 2015 incidents wherein her liberty was restrained and she was sexually assaulted by Carter. S.H. testified that during the incident, Carter used a video camera and recorded himself digitally penetrating her. She told Carter that she did not want to be on film but Carter filmed her anyway....

> {¶37} The trial court ultimately granted the State's request for temporary closure of the courtroom, noting Carter's objection. The court reasoned that[:]

> > because of the nature of the videotapes, and the record should reflect the Court has already seen these before the hearing, because of the nature the Court is going to have the Courtroom cleared other than the jurors, obviously, who will stay in. Once the videos are played we'll probably be taking a break shortly thereafter and then everybody else can come into the Courtroom. So, other than the jurors the Court would order that because of the sensitive nature and the graphic nature of the videos that the Courtroom will be cleared. So, everybody audience, please – counsel's staff can stay.
> > ....

> {¶38} After the trial court's ruling, the record reflects that "the general public" was cleared from the courtroom. Thereafter the State played three video clips from State's Exhibit 61, which were contained on a flash drive. No questions were asked while the videos were played.

> {¶39} After the video clips were played, the trial court took a recess and the trial reconvened with the public in attendance. The prosecutor then resumed asking S.H. questions about the videos that were viewed in the absence of the public.

*Carter*, 2022 WL 1298445, at *6–7.

On direct appeal, the court of appeals overruled Carter's argument. It first explained that:

> {¶41} Contrary to Carter's arguments, the State mentioned the sensitive nature of the videos, providing reasoning for a partial, temporary closure. The trial court itself had viewed the videos, and found them to be sensitive and graphic. Moreover, the trial court limited the closure to *only* the time wherein the videos were being played. The trial court thus effectively addressed the appropriate factors in this matter when making its determination on partial, temporary courtroom closure and for this reason alone we could find no abuse of discretion.

> {¶42} However, we would emphasize again that no questions were asked of S.H. while the videos were being played and while the public was briefly excluded from the courtroom. S.H. was questioned about the events on the video both before and after the courtroom closure, but not during. Thus spectators were not prevented from hearing any of S.H.'s testimony.

*Id.* at *7.

The court appeals next recognized that "closure of courtrooms to the public, and particularly the media, should only be done in very limited circumstances." *Id*. Nonetheless, citing state case law, it held that "[u]nder the specific facts and circumstances of this case," the court could not "find that the trial court abused its discretion by determining that privacy was a valid concern." *Id.* at 339 & n.6. The court further noted that "the trial court

27

narrowly tailored a courtroom closure for a very small portion of the trial, which included no actual testimony." *Id.* at 339.

In the face the court of appeals' analysis, Carter makes three conclusory statements in support of his Ground 17 claim. First, he says that the "standard"—presumably for determining whether closure is appropriate— "was neither met [n]or brought to light at [his] trial." Doc. 5-1, at 30. In his Traverse, he asserts that "the trial court violated his Sixth Amendment right to a public trial when it closed the courtroom to spectators during the playing of the audio recording." Doc. 13, at 14. Finally, he says "the trial court failed in each and every duty required in the justification of closing the courtroom." *Id.* at 15. Beyond these conclusory statements, Carter simply cites, without explanation, cases that generally establish the right to a public trial. *See id.* at 14–15; Doc. 5-1, at 29. Notably, Carter does not advance any discernable argument that the state courts' rejections of his public trial claim were "contrary to," or "involved an unreasonable application of" "clearly established" precedent. 28 U.S.C. § 2254(d)(1). He also doesn't attempt to show that the court of appeals' adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

These requirements in Section 2254(d) are notably not mere suggestions that a court can simply ignore. *See Blackmon v. Booker*, 696 F.3d 536, 557 (6th Cir. 2012) (chiding a district court for "ignor[ing] the myriad of limitations that

§ 2254(d)(1) imposed on its review"). Rather section 2254(d) places "a heavy burden for a petitioner to overcome." *Tibbetts v. Bradshaw*, 633 F.3d 436, 442 (6th Cir. 2011) (emphasis added). Carter, however, ignores Section 2254(d)'s requirements. So there is no basis to conclude that the court of appeals' adjudication (1) "was contrary to," or "involved an unreasonable application of, clearly established" precedent; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1), (2). Carter has thus forfeited these necessary arguments. *J. B-K. by E.B. v. Sec'y of Kentucky Cabinet for Health & Fam. Servs.*, 48 F.4th 721, 730 (6th Cir. 2022). And even if he hasn't forfeited the arguments, by ignoring Section 2254(d), Carter has necessarily failed to carry the burden that subsection (d) imposed on him. So the Court should reject Carter's seventeenth ground.

The record shows that the state appellate court analyzed Carter's same public trial claim, under both the United States and Ohio Constitutions. Doc. 10-1, at 335. The court of appeals rejected this claim, reasoning that the trial court did not abuse its discretion when it "narrowly tailored a courtroom closure for a very small portion of the trial, which included no actual testimony." *Id.* at 339. As noted, Carter does nothing to show that this determination is contrary to or involved an unreasonable application of clearly

established Supreme Court precedent.[5] This Court is obligated to defer to the state court of appeals' rejection of Carter's argument absent a showing that Carter has not made. *See* 28 U.S.C. § 2254(d).

Additionally, to the extent Carter raised this issue in his post-conviction petition, it is procedurally defaulted. When Carter presented his public trial argument in his post-conviction petitions, the trial and appellate courts rejected it as procedurally barred by Ohio's doctrine of res judicata. *See* Doc. 10-1, at 652–53 (the trial court's rejection), 767 (the court of appeals rejection). The court of appeals reasoned that Carter's "assignment of error simply repackages and reargues what was already raised previously[.]" *Id.* at 767. And issues rejected on the basis of Ohio's res judicata rule are procedurally defaulted. *Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001) (claims raised in a post-conviction petition that the state court denies on the basis of res judicata are procedurally defaulted) (citing *State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967)). Ohio's res judicata rule thus bars review of Carter's claim that his right to a public trial was violated, to the extent that the claim was raised in Carter's post-trial petition.

As noted, Carter has not made any relevant argument to avoid procedural default. He has not asserted cause or prejudice to excuse his

---

[5]    In *Waller v. Georgia*, the Supreme Court held that it "has made clear that the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." 467 U.S. 39, 45 (1984).

procedural default, or shown that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496,

Carter's Ground 17 claim should thus be rejected.

### 1.3    *Ground 13 is procedurally defaulted and non-cognizable.*

Carter's Ground 13 claim challenges the trial court's application of a state statutory scheme related to petitions for post-conviction relief. Doc. 5-1, at 16, 30. This ground fails because it is both procedurally defaulted and non-cognizable.

First, as with his Ground 14 through 16 claims, this claim is procedurally defaulted. Carter raised this issue in his post-conviction petition but failed to perfect an appeal to the Ohio Supreme Court, which denied his application to file a delayed appeal. And that independent and adequate ground for decision bars habeas review of this issue. *See Bonilla*, 370 F.3d at 497.

Second, Carter's Ground 13 claim is non-cognizable because it challenges the state court's application of state post-conviction procedural rules. The Sixth Circuit, "has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002) and *Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986)); *see Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 854 (6th Cir.

31

2017). The Court has explained that challenges to "state collateral post-conviction proceedings 'cannot be brought under ... 28 U.S.C. § 2254,' because 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.'" *Cress*, 484 F.3d at 853 (quoting *Kirby*, 794 F.2d at 246, *in turn quoting Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). And a successful challenge to state collateral post-conviction proceedings "would not 'result [in] ... release or a reduction in ... time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention.'" *Id.* (quoting *Kirby*, 794 F.2d at 247).

Moreover, in conducting habeas review, this Court does not "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *see Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). Rather, this Court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States," not alleged violations of state laws or rules. *Estelle*, 502 U.S. at 68. And merely invoking a constitutional provision is not enough to turn a state-law issue into a constitutional question. *Cf. Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001) ("a petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb").

32

Here, Carter does not acknowledge that alleged errors in state post-conviction procedure are generally not cognizable for federal habeas purposes. *See generally* Doc. 13. It follows that he also does not make any argument that the state court's alleged failure to properly apply state court post-conviction procedural rules amounted to a violation of his federal constitutional rights. *Id.* So Carter has not made any argument that would place his Ground 13 claim within the scope of cognizable claims for federal habeas purposes.

For each of these reasons, Carter's Ground 13 should be dismissed as defaulted and non-cognizable.

## 2. *Grounds arising out of Carter's 26(B) application*

### 2.1 *Grounds 3, 4, and 5 are meritless.*

In his Grounds 3, 4, and 5, Carter argues that his appellate counsel was ineffective because counsel failed to challenge trial counsel's representation related to pre-trial motions and hearings. Doc. 1, at 8, 10, 21. As to Count 3, Carter argues that his appellate counsel should have argued that trial counsel was ineffective for not arguing that a statement from an officer concerning the 2015 rape was made "under false pretense" since, in Carter's opinion, the video mentioned in the statement did not actually show the crime. *Id.* at 8; Doc. 5-1, at 8. In Ground 4, he argues that appellate counsel was ineffective because he failed to challenge the withdrawal of a motion challenging a "no knock" warrant for the search of Carter's residence. Doc. 1, at 10; Doc. 5-1, at 10. As to Ground 5, Carter appears to allege that appellate counsel was ineffective for

failing to challenge certain findings at a suppression hearing, including the decision that the evidence at issue would have been inevitably discovered. *Id.* at 21–22.

The standard in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to ineffective-assistance-of-appellate-counsel claims. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). A petitioner must show that counsel's assistance was objectively unreasonable and a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

When the court of appeals considered these arguments in relation to Carter's 26(B) application, it recognized that "all assignments of error [raised on appeal] [had been] found to be without merit." Doc. 10-1, at 427. It then held that Carter's Rule 26(B):

> arguments are entirely without basis, relate to decisions and tactics of trial counsel, and or involve a rephrasing of prior arguments. There is no genuine issue shown as to whether a colorable ineffective assistance of appellate counsel exists or that the outcome of the appeal would have been difference had these additional arguments been initially included. Accordingly, because Appellant has not satisfied the threshold showing required under App. R. 26(B), the instant application should be denied.

Doc. 10-1, at 427.

34

Carter's arguments, to extent the Court can discern his arguments, fail at the starting gate. Carter's Ground 3 argument is that appellate counsel should have argued that trial counsel was ineffective for not pointing to an alleged discrepancy. Doc. 1, at 8. Specifically, he says that the lead detective testified during the suppression hearing that a video contained evidence of the alleged rape of S.H. in 2015, but that at another time, the detective "showed and stated that the video 'did not' show the crime in question." *Id*.

To understand this assertion, it is helpful to consider what Carter argued in his Rule 26(B) application. There, he asserted:

> In the Motion to Suppress, the lead detective in the case stated that the video contained evidence of the 2015 alleged rape of Shante Hudgins (Tp. Pg. 41, Motion to Suppress). However, on (Tp. Pg. 675) the very detective showed, and stated that the video "did not" show the crime in question. Thus, the lead detective was dishonest in his moving to have the video admitted.

Doc. 10-1, at 414–15. From there it is helpful to consider the testimony Carter referenced.

The referenced page 41 of the suppression hearing is found at page 163 of record document 11-1. There, Detective Stechschulte testified about videos he'd obtained following a search. *See* Doc. 11-1, at 160–63. When asked what he was looking for when he examined media that contained a video, the said:

> Okay. What I was looking for was any video evidence that I had on that thumb drive and if there was any video evidence that would have supported what [S.H.] had stated, *which there was*, then I would run across it. I don't know which date is on any of these

> things and the times. I just see a stamp and a
> number underneath each stamp.

Doc. 11-1, at 163 (emphasis added).

The referenced page 675 of the trial transcript is found at page 705 of record document 11-2. There, the following colloquy occurred between Detective Stechschulte and Carter's counsel:

> Q    You commented about those videos in your Police report; correct?
>
> A    I did.
>
> Q    Okay. You said in your Police report, 'that three of the videos were of him filming [S.H], but they did not appear to be the ones she told me about in the interview'; correct?
>
> A    Yes. I mean, I'm trusting you on that one. I don't remember what exactly I wrote in my report.

Doc. 11-2, at 705.

Putting the above together, Carter's Ground 3 argument goes like this. During the suppression hearing, the detective said that "there was … video evidence that would have supported what [S.H.] had stated." Doc. 11-1, at 163. And during the trial, the detective agreed "that three of the videos," that were shown during the trial, *see* Doc. 11-2, at 704–05, "were of [Carter] filming [S.H], but they did not appear to be the ones [S.H.] told [the detective] about" when he interviewed S.H., *id*. at 705.

The obvious problem with this ground is that, although Carter says that appellate counsel should have faulted trial counsel for not arguing about this

36

alleged discrepancy, there is no discrepancy. The fact that the detective said there was video evidence that supported S.H.'s allegations is not inconsistent with the statement that certain videos were apparently not the ones that S.H. told the detective about. Further, even if there were some slight discrepancy, it's not difficult to imagine defense counsel not wanting to highlight the possibility that Carter had taken even more videos of him sexually assaulting his victims. And if trial counsel was not ineffective, appellate counsel could not have been ineffective for not raising trial counsel's alleged ineffectiveness. *See Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). So it is easy to see why the Ohio court of appeals dispatched this argument.

As to Ground 4 and 5, in his Traverse, Carter "asserts that *counsel* was ineffective for not pursuing the suppression of evidence issues." Doc. 13, at 10 (emphasis added). He recognizes that, as to Grounds 4 and 5, trial counsel's decision to withdraw certain motions was a "tactical decision," Doc. 13, at 10, which is presumed proper unless it is shown to be unreasonable. After citing the general *Strickland* standard, Carter concludes that "it is clear that a motion to suppress could have been granted … as the record indicates that all evidence was collected and admitted in violation of Carter's constitutional rights." *Id.*

Carter's argument misses the mark, however, because he does not address how his issues with trial counsel's "tactical decision[s]" relate to his Ground 4 and 5 claims that *appellate counsel* was ineffective. Afterall, the

question is whether appellate counsel was ineffective for not faulting trial counsel. Showing that trial counsel was ineffective only addresses half of the question.

Further, Carter's traverse does not cite the court of appeals' decision that rejected his current arguments, let alone provide any basis to support the idea that the court of appeals' rejection of his arguments was contrary to or an unreasonable application of clearly establish precedent. *See* 28 U.S.C. 2254(d). In sum, Carter has not made any argument or showing sufficient to overcome deference to the state court's last reasoned decision. *See* 28 U.S.C. § 2254(d).

Further, even if he had, his arguments would fail. In Ground 4, Carter says that appellate counsel should have faulted trial counsel for withdrawing his challenge to the "no knock" aspect of a search warrant because the "warrant was out of compliance." Doc. 1, at 10. But Carter ignores the fact that (1) the alleged failure of "compliance" related to Ohio Revised Code § 2935.12, *see* Doc. 10-1, at 60, and (2) the Ohio Supreme Court has held "that once a warrant has been issued, the exclusionary rule is not the appropriate remedy under Article I, Section 14 of the Ohio Constitution for a violation of [Ohio Revised Code §] 2935.12." *State v. Bembry*, 90 N.E.3d 891, 900–01 (Ohio 2017). So trial counsel correctly concluded that there was no basis for his motion. And if trial counsel wasn't ineffective for withdrawing the motion, appellate counsel couldn't have been ineffective for not faulting trial counsel. *See Greer*, 264 F.3d at 676.

And in Ground 5, Carter says that appellate counsel was ineffective for not challenging the trial court's decision after the suppression hearing that the police did not exceed the scope of the search warrant. Doc. 1, at 21. All Carter offers to support this argument is that (1) the property in question was rented and he did not live there or regularly frequent it, and (2) "the only suspicion of drugs at this house w[as] from the alleged victim who stated that [Carter] at some time went down stair[s] to sell drugs," although the victim did not witness the sales or see drugs or money when Carter returned to the room. *Id*. at 22.

But Carter doesn't explain why these alleged facts would cause a reviewing court to conclude that authorities exceeded the scope of a warrant which, according to prosecutor's statement during the suppression hearing:

> authorized law enforcement to search for and seize, again, among a number of other things, computers, computer hardware, computer software, electronics, and data contained within the electronic devices, camera systems with any and all storage devices for video from camera systems.

Doc. 11-1, at 135. Indeed, it's not apparent what the asserted facts have to do with the warrant's scope. More to the point, it's not apparent what could be wrong with the court of appeals conclusion that this argument was "entirely without basis," and failed to present a "genuine issue … as to whether a colorable ineffective assistance of appellate counsel exists or that the outcome of the appeal would have been differen[t] had th[is] additional arguments been initially included." Doc. 10-1, at 427. So this ground is meritless.

*2.2 Grounds 1, 2, 10 and 12 are meritless.*

Carter's Grounds 1, 2, 10, and 12 all take issue with his appellate counsel's alleged failure to challenge the sufficiency of evidence at trial. *See* Doc. 1, at 5, 7, 21–2. In Ground 1, Carter asserts that his appellate counsel was ineffective by not arguing there was insufficient evidence to support the necessary element of force or threat of force in relation to Carter's rape convictions because, he asserts, "the alleged victim consent[ed]." Doc. 1, at 5. In Ground 2, he likewise faults appellate counsel for failing to argue that there was insufficient evidence to support his kidnapping conviction because, he asserts, "the alleged victim consented" and "without the rape, there is no kidnapping." *Id.* at 7. In Ground 10, Carter argues that appellate counsel was ineffective because he failed to argue there was insufficient evidence at trial to support Carter's drug possession charge. *Id.* at 21. In Ground 12, he claims that appellate counsel was ineffective by not arguing that "the specific alleged acts … were never matched to an offense concerning the charge of rape," which he asserts was a jury unanimity issue because "in multiple acts cases the court requires that either the state elect the particular criminal act upon which it will rely for conviction or that the court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt." *Id.* at 23.

On direct appeal, Carter's appellate counsel argued that the weight of the evidence did not support his convictions as to either victim. Doc. 10-1, at 229. The court of appeals rejected these arguments on the merits, *id.* at 339–

56, and the Ohio Supreme Court declined to accept jurisdiction, *id.* at 410. Then, in his 26(B) application, Carter claimed that his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence. *See Id.* at 412–14, 419–20. The court of appeals rejected all of Carter's arguments because, the Court of Appeals reasoned, his "twelve additional assignments of error fail to show a genuine issue as to whether a colorable claim of ineffective assistance of appellate counsel exists."[6] *Id.* at 427. The court recognized that, among other claims, Carter's appellate counsel challenged the "manifest weight of the evidence supporting the charges" and that argument was "found to be without merit." *Id.* Carter failed to show that his appellate counsel was ineffective or that "the outcome of appeal would have been different had these additional arguments been initially included." *Id.* The court of appeals thus reasoned Carter failed to satisfy the threshold showing required for a Rule 26(B) application. *Id.*

Once again, Carter ignores Section 2254(d)'s requirements. So there is no basis to conclude that the court of appeals' adjudication of appellate ineffectiveness claim (1) "was contrary to," or "involved an unreasonable

---

[6]     In *State v. Leyh*, the Ohio Supreme Court explained that Rule 26(B) "establishes a two-stage procedure to adjudicate claims of ineffective assistance of appellate counsel." 185 N.E.3d 1075, 1079 (Ohio 2022). "'The first stage involves a threshold showing for obtaining permission to file new appellate briefs,'" during which the applicant must show that "'there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal.'" *Id.* (citations omitted). The court of appeals' decision reflected that it rejected Carter's application at this first stage.

application of, clearly established" precedent; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1), (2). Carter has thus forfeited these necessary arguments. *J. B-K. by E.B.*, 48 F.4th at 730. And even if he hasn't forfeited the arguments, by ignoring Section 2254(d), Carter has necessarily failed to carry the burden that subsection (d) imposed on him. So the Court should reject Carter's first, second, tenth, and twelfth grounds.

Simply put, Carter makes no argument that the Court of Appeals erred when it rejected his Rule 26(B) application, let alone the requisite showing that the court of appeals' decision is contrary to or an unreasonable application of law. As such, he has made no effort to overcome the deference owed to that court. *See* 28 U.S.C. § 2254(d). Instead, Carter attempts to rehash the same substantive arguments explicitly rejected as meritless by the court of appeals.[7]

---

[7]    In Ohio, when an appellant raises a sufficiency argument, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. McFarland*, 164 N.E.3d 316, 323 (Ohio 2020) (citation omitted). Given this deferential standard, it's been said that "sufficiency of the evidence" challenges are "seldom successful[.]" *United States v. Zambrano*, 776 F.2d 1091, 1094 (2d Cir. 1985). Indeed, a rape victim's "testimony satisfies the [sufficiency] test," even if uncorroborated. *State v. Johnson*, 858 N.E.2d 1144, 1158 (Ohio 2006).

Carter does nothing to show that his counsel was ineffective for declining to raise a "seldom successful" challenge and he further does nothing to show that the court of appeals' decision, that such a challenge would have changed nothing, Doc. 10-1, at 427, was somehow an unreasonable application of the facts. Indeed, to the extent the court of appeals' decision rests on its consideration of state law, a claim based on it is not cognizable in this forum.

And as to Ground 12, Carter points to nothing in the record that would allow the Court to even begin determining whether he could meet Section

Carter's Ground 1, 2, 10, and 12 claims should thus be dismissed as meritless based on deference to the state court's determination of these issues.

### 2.3    *Ground 6 is meritless.*

For his Ground 6 argument, Carter asserts that his appellate counsel was ineffective by failing to challenge the admission of testimony from Sexual Assault Nurse Examiner ("SANE") Pierce during trial. *See* Doc. 1, at 21. Because his claim involves testimony admitted at trial, it was first available for presentation in state court during his direct appeal. But appellate counsel did not raise this claim on direct appeal and it was instead presented for the first time in Carter's 26(B) application. Doc. 10-1, at 417.

Carter's Ground 6 runs into two immediate problems. First, SANE Pierce was not offered as an expert. *See* Doc. 11-2, at 371–97. So, under applicable state evidentiary rules, the State did not need to qualify her as an expert. Instead, it only needed to qualify her as a lay witness. *See State v. Belle*, 2019-Ohio-787, 2019 WL 1077871, at *9 (Ohio Ct. App. 2019). Any argument that the State failed to qualify SANE Pierce as an expert would have been baseless.

Second, trial counsel did not object to SANE Pierce's testimony. *See* Doc. 11-2, at 371–406. As a result, if appellate counsel had challenged SANE Pierce's testimony, counsel would have faced Ohio's contemporaneous-

---

2254(d)'s requirements. Indeed, in his Traverse, Carter doesn't mention the basis for this ground. *See* Doc. 13, at 7–10.

objection rule, under which counsel would have had to meet Ohio's "strict" plain error standard to raise an otherwise forfeited issue. *See State v. Murphy*, 747 N.E.2d 765, 789 (Ohio 2001).

Given these issues, there is no basis to contest the court of appeals' rejection of this ground.

In his Traverse, Carter asserts that the Warden concedes both trial and appellate counsel were ineffective when it stated:

> Carter's trial counsel failed to object to the admission of the SANE nurse's testimony – either as expert or lay/fact witness. As such, appellate counsel would have had to raise trial counsel's deficiency for failing to challenge the SANE nurse's testimony.

Doc. 13, at 11. The cited quotation does not provide the proverbial smoking gun Carter seems to anticipate because it does nothing to show that the court of appeals' denial his Rule 26(B) application involved an adjudication that ran afoul of 28 U.S.C. § 2254(d). And to the extent that Carter attempts in his Traverse to rely on the alleged ineffectiveness of his trial counsel, that attempt comes far too late. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (petitioner's insufficiency-of-the-evidence argument raised for the first time in his traverse was not properly before the district court, so the district court did not err when it didn't consider it).

Carter's Ground 6 argument thus fails to show the state court's analysis was contrary to or an unreasonable application of federal law. So this Court should reject this ground.

*2.4     Grounds 7 and 8 are meritless.*

Carter's Ground 7 claim asserts that his appellate counsel was ineffective because it failed to raise that the trial court's instruction, i.e. that the jury should not consider testimony regarding alleged drug transactions as evidence of prior bad acts, was improper because it "solidified the perception that [Carter] did sell drugs. Doc. 1, at 21–22; *see also* Doc. 13, at 11. In his related Ground 8, Carter argues that his appellate counsel was also ineffective because counsel did not argue that the trial court improperly allowed, without pre-trial notice, testimony regarding the alleged drug transactions, which qualified under Ohio Rule of Evidence 404(B) as evidence of prior bad acts. *See* Doc. 1, at 21–22. Carter raised both of these arguments in his Rule 26(B) application asserting that appellate counsel was ineffective for failure to present both arguments on direct appeal. Doc. 10-1, at 417. The court of appeals rejected both arguments and concluded that they were "entirely without basis," so Carter failed to make "the threshold showing required under App.R. 26(B)[.]" *Id.* at 427.

During the direct testimony of one of Carter's victim, the following colloquy took place:

> Q     Okay. The reason I ask that is because you said 'not at first'.
>
> A     Right. Because then he did make a comment about, like, asking, like, if I wanted to do anything, and I said 'no', and then he went downstairs.

45

> Q      Okay. What did he ask you about? As specifically as you can recall, what did he ask?
>
> A      I don't remember specifically.
>
> Q      Okay.
>
> A      It was, like, so vague. Like, it wasn't really, like, anything -- I don't know. It wasn't that big of a comment, I guess.
>
> Q      Okay. You weren't concerned at that point?
>
> A      No.
>
> Q      Okay. All right. So, that comment is made. Then what happened?
>
> A      Then he went downstairs.
>
> Q      Do you know why he went downstairs?
>
> A      Yes.
>
> Q      Why did he go downstairs?
>
> A      People came to buy drugs off of him.

Doc. 11-2, at 301. At this point, trial counsel objected and trial court and counsel had a sidebar discussion. *Id.* at 301–04.

After the sidebar discussion, the trial court provided the jury with a limiting instruction:

> Okay, Ladies and gentleman, again, just disregard anything that you may overhear when we have these conferences at the Bench. Legal issues arise that the Court has to make rulings on. There was some testimony here as to the witness indicated why she said that Mr. Carter had left the bedroom to go downstairs. So that was evidence of other behavior that's not the subject of this case in terms of if you

46

> believe her testimony that he went downstairs to sell
> somebody some drugs. You can't use that evidence
> that he acted in conformity with that behavior.
> That's other behavior that's not charged in this case.
> That evidence—she was just explaining what was
> going on that day and what she believed he sent
> downstairs for. But, you can't use that to say, well,
> if you believe that you can't use that to prove any of
> the other charges in the case It's very specific. You
> can only consider that to show what was going on,
> the entire course of conduct that was going on there.
> He's not charged—the defendant is not charged with
> selling anybody any drugs. So, the fact that she said
> that, if you believe that, you cannot use that for any
> other purpose. Okay? The State has to prove all the
> elements of the charged conduct with proof beyond a
> reasonable doubt. The fact that she said he went
> downstairs to sell drugs can't be used to prove those
> other elements that they have to prove. Okay?

*Id*. at 304–05. Carter's counsel did not object to the trial court's instruction.

The State's examination then continued. *See id*. at 305.

Under Ohio rule 404(B), "the proponent of evidence to be offered under

[the] rule shall provide reasonable notice in advance of trial, or during trial if

the court excuses pretrial notice on good cause shown, of the general nature of

any such evidence it intends to introduce at trial."  As to Ground 7, Carter

offers no more than his opinion that the trial judge's limiting instruction

supported the impression that he was a drug dealer. But in Ohio, it is well-

established that "[a] jury is presumed to follow the instructions, including

curative instructions, given it by a trial judge." *State v. Garner*, 656 N.E.2d

623, 634 (Ohio 1995). The possibility that a jury might not follow an instruction

is hardly a basis to conclude that Carter's jury did not follow this instruction

or that the court of appeals ran afoul of Section 2254(d) when it concluded that Carter's argument was meritless.

And as to Ground 8, Carter ignores that the fact Rule 404(B)'s notice requirement applies to a proponent of extrinsic evidence. From what transpired, it's not clear that the State intended to elicit testimony that Carter was selling drugs. During the sidebar discussion, the prosecutor said, "Well, we don't need to get into that specifically. I don't mind a limiting instruction." Doc. 11-2, at 302. Further, when direct examination continued, the prosecutor did not pursue the line of inquiry. *See id.* at 305–26. And this matters because, as with Carter's other grounds, he fails to discuss Section 2254(d) or how the court of appeals' decision runs afoul of it.

In support of his petition, Carter cites only an Advisory Committee Note to Federal Rule of Evidence 403. Doc. 13, at 11. This citation does nothing to overcome the deference owed to the court of appeals' decision. For starters, Rule 403 is not at issue in either Ground. Grounds 7 and 8 plainly challenge the use of, and instruction related to evidence of prior bad acts under Rule 404(B). *See* Doc. 1, at 21. So it is unclear why Carter cites this source in his Traverse. Second, this Advisory Committee note does not provide any basis to show that the court of appeals' decision rejecting Carter's argument was contrary to or an unreasonable application of law. *See* 28 U.S.C. § 2254(d). Carter has thus not made any showing to overcome the applicable deference owed to the state court decision and these grounds should be rejected.

48

### 2.5    Ground 9 is meritless.

Carter's Ground 9 claim asserts that appellate counsel was ineffective by not asserting that trial counsel was ineffective for failing to challenge the trial court's decision to limit cross-examination of a witness. Doc. 1, at 21. Ground 9 takes issue with the trial court's underlying decision to limit, in Carter's words "abrogate," cross-examination of one of the State's witnesses during trial. Doc. 1, at 21. He claims that the trial court improperly cut short defense counsel's cross-examination of a testifying officer because the line of questioning, Carter argues, was directed at impeaching another officer who was not testifying. *Id.* at 23. Because the questioning was curtailed, Carter claims he was denied the right to present his defense because "the trial court clearly impeded [his] ability to impeach the credibility of the state's witness." Doc. 13, at 12. Carter's argument is thus that appellate counsel was ineffective for failing to raise this issue on appeal.

As noted, the state court of appeals rejected all of Carter's ineffective assistance of appellate counsel arguments, including the claim now verbatim included as Ground 9, when raised it in Carter's 26(B) application. Doc. 10-1, at 427. This Court must defer to the court of appeals decision absent a showing that the state appellate court decision was contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). But Carter offers no argument challenging the state court determination that his appellate counsel was not ineffective for failing to raise a meritless issue.

49

Instead, he simply reasserts the rejected claim that appellate counsel was ineffective for his failure to assert this claim on direct appeal. Doc. 13, at 12. So Carter has not demonstrated any basis to conclude that he can meet Section 2254's standard.

Further, it is apparent why a claim of ineffective assistance of appellate counsel would fail. For starters Officer Brotherwood, the subject at issue, did was not a testifying witness in Carter's trial. Instead, Carter's trial counsel brought up his name when cross-examining Officer Kunkleman regarding the 2018 investigation and a related task force. Doc. 11-2, at 628. The relevant examination by Carter's trial attorney, Dustin Blake went like this:

> Q    There was an Officer Dustin Brotherwood and he was on the Task Force as well; right?
>
> A    Yes, he was.
>
> Q    He was involved in this case; is that true?
>
> A    He was there with me to help identify things.
>
> Q    Okay. You guys kind of worked as partners before on the Task Force?
>
> A    More or less; yes.
>
> Q    Okay. He's no longer with the Task Force; correct?
>
> A    He's no longer with the Police Department.
>
> Q    And that's because he had to resign; is that right?
>
> A    Not to my knowledge.

50

Q        Okay. Was he fired?

A        No.

Q        Okay. He's no longer with them? He neither resigned nor was fired, though; right?

A        He left.

Q        He left? He left because –

MR. MILLER: Objection.

MRS. KING-NEWMAN: Objection.

THE COURT: Sustained.

Q        The reason that he left --

MR. MILLER: Objection.

THE COURT: Sustained.

MR. BLAKE: Judge, can we approach?

THE COURT: Sure.

(WHEREUPON, Court and counsel had a brief discussion at the Bench, on the record, as follows.)

THE COURT: Is he a witness?

MRS. KING-NEWMAN: No.

MR. MILLER: No.

MR. BLAKE: Well, he's a part of the investigating Officers that came in. I think it goes to the investigation. I can ask. I was just going to ask.

MR. MILLER: No.

THE COURT: I'm not going to allow it.

> (WHEREUPON, Court continued on the record, as follows.)
>
> THE COURT: Continue.
>
> MR. BLAKE: No further questions, your Honor.

Doc. 11-2, at 628–29. Review of the testimony illustrates that Officer Brotherwood was a non-testifying witness. It also shows that the factual assertions Carter makes in support of his Ground 9 are twice inaccurate. First, the trial court did not "cut short the cross-examination of the [testifying officer]" as a general matter. *See* Doc. 1, at 23. Instead, trial counsel was simply prevented from continuing a line of questions related the circumstances of a non-testifying officer's departure from the police department. Doc. 11-2, at 628–29. That trial counsel did not further question the witness on other matters after the cited exchange was trial counsel's choice, not the court's directive. Second, the testimony demonstrates that the testifying officer did not state that "Officer Brotherwood left after being fired for bad behavior" and it shows that testifying officer explicitly denied that Officer Brotherwood was fired from the task force. *Compare* Doc. 1, at 23, *with* Doc. 11-2, at 628. So, the factual assertions made in support of Carter's Ground 9 are false and would not have supported a meritorious ineffective assistance of appellate counsel claim.

Carter's Ground 9 claim should, thus, be rejected.

*2.6    Ground 11  is meritless.*

Carter asserts as his Ground 11 claim that his appellate counsel was ineffective for failing to argue that the trial court "used an unfounded assertion to sentence" him. Doc. 1, at 22. Apparently by way of explanation, Carter asserts that the trial court erred because it "never stated that it interviewed the victim" and otherwise failed to include a professional finding of the victim's psychological harm during the sentencing phase. *Id*. at 23.

Carter's Ground 11 argument is somewhat confusing because it implies, without any citation to a statute or instruction, that a sentence must be based on a "professional finding of … psychological harm being inflicted upon the alleged victim." *See* Doc. 13, at 12. But, as the Warden points out, there is no such requirement for a "professional finding.". Doc 10, at 52–53. Carter responds that the Warden's point is "borderline non-responsive" because it doesn't discuss "Ohio law and the due process violation that occurs when the law is ignored in its entirety by the court and failed to be presented by appellate counsel." Doc. 13, at 12. Carter, however, does not identify any law that the trial court ignored. And without a violation by the trial court, there is no basis to conclude that appellate counsel was ineffective.

Carter's efforts to show that his appellate counsel erred, assuming that is what he is attempting to do, do not address the inquiry with which this Court is concerned. Specifically, Carter does not argue anywhere that the state court of appeals' decision rejecting his ineffective assistance of appellate counsel

claim was contrary to or an unreasonable application of clearly established federal law. *See* Doc. 13, at 13–14 (citing the general standards for deference but making no affirmative argument). Carter's simply advances conclusory statements addressing the underlying merits of his claim without providing any basis to avoid deference to the state court's decision. *See* 28 U.S.C. § 2254(d). So his Ground 11 claim does not provide any basis for habeas relief and should be denied.

## Conclusion

For all of the reasons stated, I recommend that Carter's petition be dismissed.

Dated: July 17, 2025

/s/ *James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).